### SCHOELLKOPF v. BRYAN et al.
### (No. 7552.)

(Court of Civil Appeals of Texas. San Antonio. April 28, 1926. Rehearing Denied May 26, 1926.)

**1. Deeds ☞99—A deed absolute on its face and contemporaneous contract in reference thereto may be considered together to determine effect of deed.**

A contemporaneous contract, executed by parties to deed, in connection with deed absolute on its face, may be taken into consideration in determining effect of deed.

**2. Contracts ☞143.**

The integrity of lawful contracts, deliberately entered into in good faith, and plainly expressed, is inviolate.

**3. Contracts ☞143.**

A contract, expressed in unambiguous, direct, and emphatic language, must be construed according to its plain import.

**4. Mortgages ☞294—Where mortgagor's deed to mortgagee conveyed fee simple, and grantee agreed when he sold to apply profit as credit on debt, grantee's obligation was not to arbitrarily refuse offer sufficient to extinguish debt.**

Where mortgagor's deed to mortgagee conveyed property in fee simple, and contemporaneous contract declared conveyance was absolute, but recited that, when grantee sold, he would apply excess of price received over his investment as credit on debt due him from grantor on another parcel of land, limit of grantee's duty was not to fraudulently or arbitrarily refuse to sell when offered sufficient in cash to extinguish debt.

**5. Contracts ☞147(1).**

In construing contracts, courts must give effect to intention of parties as expressed in the instruments.

**6. Mortgages ☞294—Agreement by mortgagee to whom land was conveyed to apply profit on resale on debt due him from grantor held not to bind him to resell on credit.**

Where absolute title was conveyed to person having deed of trust on property, coupled with contingent promise by grantee that whenever he sold excess of price obtained over his investment should be applied on grantor's ob-

ligation to him on another tract, grantee was not bound to resell on credit.

**7. Mortgages ☞294—Finding that grantee, under agreement to apply profit on resale on debt due him from grantor, acting prudently and in good faith, would not have accepted offer to purchase on credit excused him from such liability to account.**

Where mortgagor conveyed absolute title to mortgagee, who agreed to apply excess of price on resale over his investment on debt due him from grantor, finding by jury, in grantee's action against grantor to foreclose lien, that prudent person, acting in good faith, would not have accepted certain offer to purchase on credit excused him from accounting for price offered, even though agreement required him to sell on credit.

**8. Trial ☞355(1)—Finding that prudent man would have accepted offer from prospective buyer held meaningless, if contract under which profit on sale was to be applied on debt was ignored in submission of issue.**

Where mortgagor conveyed to mortgagee, who agreed, on resale, to apply excess above investment on another debt, finding that prudent man would have accepted an offer from a prospective buyer, was meaningless, if the contract between the parties was left out of consideration in submission and determination of issue, since the contract could not be ignored.

**9. Trial ☞358.**

Where findings of jury on issues submitted are in irreconcilable conflict, judgment cannot properly be rendered.

**10. Estoppel ☞68(2)—Where grantor claimed deed was mortgage because of contemporaneous agreement, and grantee acted in reliance on claim, grantor was estopped from asserting title was in grantee.**

Where grantor contended deed absolute on face, and grantee's contemporaneous agreement to apply excess of price on resale over investment on debt due from grantor constituted mortgage, and grantee acquiesced, and, in reliance on claim, filed action for lien foreclosure, and refrained from selling property, and grantor took the same position in his pleadings until shortly before the third trial, he was estopped from asserting title was in grantee.

Error from District Court, Dallas County; T. A. Work, Judge.

Action by G. H. Schoellkopf against E. P. Bryan and others. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

Spence, Haven & Smithdeal and Locke & Locke, all of Dallas, for plaintiff in error.

Etheridge, McCormick & Bromberg, J. M. McCormick and S. M. Leftwich, all of Dallas, for defendants in error.

SMITH, J. On March 23, 1911, G. H. Schoellkopf, the owner, sold a certain busi-

ness lot in the city of Dallas to M. G. O'Neil for a consideration of $1,000 cash, and three notes for $2,000, $6,000 and $35,000, respectively. The notes bore interest, payable semiannually, and were secured by the vendor's and deed of trust liens. On September 26, 1911, O'Neil sold the lot to W. L. Spence, who assumed payment of the several notes mentioned. On February 17, 1913, Spence in turn conveyed the lot to E. P. Bryan, subject to the notes for $6,000 and $35,000; the one for $2,000 having been previously paid. Subsequently Bryan paid the note for $6,000, and assumed the payment of the remaining one for $35,000.

It appears that the interest on the outstanding obligations against the property was paid up to March 23, 1914, at which date the note for $6,000 was also paid. But no further interest payments were made during the ensuing two years, and the taxes for the years 1914 and 1915 were not paid. These items, as to which Bryan was in default, amounted to nearly $6,000 on March 23, 1916, at which date the note for $35,000 matured. Bryan was unable to discharge these obligations or any part of them, and at his request Schoellkopf advanced to him an amount sufficient to pay the delinquent taxes on the Dallas property, aggregating nearly $1,000, as well as the taxes owing by Bryan upon a farm belonging to him in Anderson county, aggregating $445.95, and took Bryan's note for these amounts as well as for the ensuing year's interest on the Dallas obligation. These several amounts aggregated $9,560.56, and the note covering them was dated March 23, 1916, to mature a year later. This note was secured by Bryan's deed of trust upon his 1,900-acre farm in Henderson county, upon which there was an existing deed of trust lien to secure a debt of $20,000 owing to a mortgage company. The note for $9,560.56 matured on March 23, 1917, but Bryan was unable to pay it, and, upon his promise to sell either the Henderson county property or the Dallas lot, and with the proceeds pay off all of his obligations to Schoellkopf, the latter did not force an issue.

Nothing had been paid by Bryan on the principal or interest on either obligation up to July 1, 1918, and the taxes were delinquent for the years 1916 and 1917 on both the Henderson county and Dallas city properties. Moreover, the note for $20,000 against the Henderson county property, with $1,600 interest, was shortly to mature. Bryan was unable to meet any of these obligations, or to refinance them. In this crisis, on July 1, 1918, the parties entered into a written contract, in which it was provided, after reciting Bryan's default in the payment of the $9,560.56 matured note, the early maturity of the $20,000 debt against the Henderson county farm, and the delinquency of the taxes thereon—

"that in consideration of the premises, and for the purpose of making payment of the said $9,560.56 note and interest thereon accrued to July 1, 1918, viz., $1,004.94, total $10,565.56, described in said trust deed recorded as aforesaid, and to satisfy and cancel the indebtedness thereby evidenced, the said parties * * * have now mutually contracted and agreed as follows:

"(1) That the said Bryan and wife shall now execute to the said G. H. Schoellkopf a valid warranty deed conveying the said 1,900-acre tract of land unto him absolutely as his sole property, subject only to the first deed of trust lien securing the said $20,000 note above mentioned, and subject to the lien of delinquent taxes.

"(2) That the said G. H. Schoellkopf shall receive such conveyance of said lands in full and absolute payment of said $9,560.56 note and all indebtedness evidenced thereby, and will deliver the said note to the said E. P. Bryan duly canceled.

"(3) And whereas the said E. P. Bryan is indebted to the said G. H. Schoellkopf in the principal sum of $35,000, evidenced by vendor's lien note on March 23, 1911, executed by M. Griffin O'Neil to the order of G. H. Schoellkopf, due at five years, and secured by vendor's lien and trust deed lien on a lot of land 40x100 feet on the north line of Commerce street in Dallas city and county, Tex., the same property conveyed by E. W. Morten, Jr., and wife to G. H. Schoellkopf by deed recorded in book 433, page 482, of the Deed Records of Dallas county, Tex., the payment of which was assumed, for a valuable consideration, by the said E. P. Bryan in his purchase of that property:

"Now, therefore, whenever the said 1,900-acre tract of land in Henderson county, Tex., shall be sold and conveyed by the said G. H. Schoellkopf, his heirs or legal representatives, then he, the said G. H. Schoellkopf, or his heirs or legal representatives, shall apply as a credit on the said $35,000 note executed by said O'Neil and assumed by Bryan as aforesaid, the excess, if any, of the purchase price of said 1,900-acre tract of land, whether in cash or vendor's lien notes, over and above:

"(1) The $20,000 first lien indebtedness thereon secured by the trust deed to R. G. Patten, trustee, as aforesaid, including all interest, taxes and other charges, if any, owing thereon.

"(2) All taxes which G. H. Schoellkopf may have paid or may have become liable to pay assessed against the said 1,900-acre tract of land.

"(3) Eight per cent. interest computed upon G. H. Schoellkopf's entire investment in said 1,900-acre tract of land from date of his purchase thereof up to date of his conveyance thereof—such interest to be compounded annually in the event that conveyance of the land is not made by said Schoellkopf within one year from date of Bryan's deed to him.

"It is distinctly and clearly mutually understood and agreed that said conveyance of the Henderson county tract by Bryan and wife to said Schoellkopf as aforesaid shall be an absolute, bona fide conveyance of said lands to him, and the relation of debtor and creditor between the parties to the extent of said $9,-

560.56 note shall be thereby absolutely ended, and the deed, which is of even date herewith and is executed with reference hereto, is declared to be an absolute, bona fide conveyance in fee simple of said land to the said G. H. Schoellkopf, subject only to the encumbrances above stated, and this instrument is executed to declare and make manifest the true agreement of the parties to that effect. And it is hereby expressly declared by the parties that there are no reservations, mental or otherwise, and no conditions and no verbal agreements or understandings except as herein clearly expressed and set out; and the acceptance by the said G. H. Schoellkopf of the deed from Bryan and wife conveying said Henderson county land to him and his placing same of record shall be conclusive evidence of the full satisfaction and cancellation of the said $9,560.56 note, and that same has been delivered to the said E. P. Bryan duly canceled."

In pursuance of this agreement, Bryan executed and delivered to Schoellkopf a general warranty deed conveying to the latter the Henderson county farm, and reciting the consideration therefor to be the cancellation of the $9,560.56 note and deed of trust to secure it. The conveyance was made subject to the mortgage company's prior lien for $20,000, and also subject to accrued and assessed taxes upon the property. Schoellkopf canceled and surrendered Bryan's note, as provided in the contract. A few days later Schoellkopf paid these taxes, amounting to $394.41, and on November 1st, its due date, paid off the mortgage company's note, which, with interest, amounted to $21,600. At the time of this conveyance the growing crops on the farm were soon to mature, and Bryan volunteered to collect the rents of Schoellkopf from these crops, for which purpose the latter executed written authority to the former. Bryan did collect these rents, amounting to between $1,000 and $1,300, but, instead of turning the amount over to Schoellkopf, he appropriated it to uses of his own without the latter's knowledge or consent.

So by the spring of 1919 Schoellkopf's investment in the Henderson county farm aggregated approximately $34,000. In the meantime, also, two years' additional interest on the Dallas debt, amounting to $4,900, had accumulated, and Schoellkopf had been compelled to pay approximately $2,500 additional taxes on the Dallas property, so that Bryan's obligation to Schoellkopf on that property amounted to approximately $43,000. This obligation had been running for eight years, no part of the principal, and only a negligible part of the interest, had been paid, and Schoellkopf had been obliged to pay the taxes on both properties for several years in order to protect his equities. During all this period Bryan had been in possession of both properties, and had collected and used the rents and revenues therefrom without applying any part thereof to the satisfaction of the debt.

This was the situation in May, 1919. Schoellkopf had made numerous unsuccessful efforts to sell the Henderson county property, and Bryan had actively interested himself to procure its sale without success. So Schoellkopf notified Bryan that, unless something was done to satisfy the latter's obligation, he would foreclose on the Dallas property. To this Bryan replied that he had in mind a prospective purchaser for the Henderson county farm, and asked for additional time in which to develop a definite offer, which he did shortly afterward. This offer to purchase came from one H. W. Peck, who proposed to buy the Henderson county farm at the price of $76,000, of which amount only $6,060 was to be paid in cash, and the balance on credit to be spread over a period of four years. Schoellkopf rejected this proposition, and notified Bryan that he would give the latter until July 7, 1919, in which to "make some arrangement to my satisfaction, before instituting legal proceedings." No such arrangements were offered by Bryan, and on July 23, 1919, Schoellkopf brought this action. Bryan's wife and W. L. Spence were joined as defendants below, but need not be further referred to, as their interest follows that of Bryan, the principal defendant.

In his original and later petitions Schoellkopf set out the facts hereinabove detailed, and asserted that, under the contract and deed of July 18, 1918, Bryan conveyed the Henderson county land to Schoellkopf absolutely and in fee simple, with power to sell and convey when, to whom, at such price, and upon whatever terms he might choose. But, as stated in Schoellkopf's brief, it was further alleged in his petition—

"that the contract and deed of July 1, 1918, were intended to secure and protect the plaintiff, further, in the payment of the indebtedness on the Dallas city lot by authorizing the plaintiff to apply toward such indebtedness the proceeds of any sale of the Henderson county land, after first retaining the amount of the plaintiff's investment in the Henderson county land, and that thereby the defendants Bryan granted, and the plaintiff acquired, a lien on the Henderson county land to secure the payment of the indebtedness on the Dallas city lot; also, that, since the execution of the contract and deed of July 1, 1918, the defendants Bryan have claimed that the plaintiff's rights under the same, so far as the plaintiff's investment in the Henderson county land is concerned, amount only to a lien on said land to secure the repayment of such investment; that the plaintiff is desirous merely of recovering his debt from the defendants, and that, therefore, the plaintiff acquiesces in such claim, and asserts only a lien on said land to secure the repayment of his investment. It is alleged in the petition that the defendants Bryan are in possession of the Dallas city lot; that E. M. Spence is the tenant thereof; and that the defendants Bryan are receiving the rents from the said Spence, and appropriating the same to their own use and benefit, without applying the same on the taxes or on the indebtedness owing to

the plaintiff; that the defendants Bryan have no other property out of which the plaintiff may collect all or any portion of his debt; that the amount of the debt is believed to equal the entire market value of the property; and that the amount of the plaintiff's investment in the Henderson county land is believed to be nearly, if not equal to, the entire market value of the same; that the properties are inadequate security for the plaintiff's debt. Therefore, a writ of sequestration was sought for the seizure of the Dallas city lot. Affidavit and bond for sequestration were duly filed, a writ of sequestration was duly issued, and, since the defendants failed to replevy, the property was delivered to the plaintiff on August 11, 1919."

The petition ended with the prayer that Schoellkopf "have judgment for the amount of his debt, interest, attorney's fees and costs on said Commerce street (Dallas) property, and foreclosing the liens thereof on said Commerce street property and on said Henderson county property, and decreeing that both of said properties be sold for the payment of said debt; and the plaintiff prays further that he have judgment against the defendant for the amount of his investment in said Henderson county property, including interest, attorney's fees, and costs, and that said lien be foreclosed, and that said Henderson county land be sold for the payment of such debt, and the plaintiff prays for all other and additional relief to which he may be entitled."

In his trial answer Bryan took the position that under the contract of July 1, 1918, Schoellkopf was obligated to sell the Henderson county farm for cash or on credit at the first reasonable opportunity, and to apply the proceeds, whether in cash or notes, as stipulated in said contract; that Bryan had presented several opportunities to sell the property to others, but that Schoellkopf had refused such offers and obstructed all of Bryan's efforts to sell; that Bryan had procured an offer from one H. W. Peck to purchase said property for $76,000, of which $7,500 was to be paid in cash and $68,500 on credit, which Schoellkopf rejected; that, by refusing to make this sale to Peck, Schoellkopf had in effect "converted" the property, and was liable to Bryan for the difference between the amount Peck offered in cash and notes and the amount of Schoellkopf's claim against the property; that the difference should be applied to the extinguishment of Schoellkopf's claim and lien against the Dallas property.

The trial court adopted Bryan's theory that by refusing Peck's offer to purchase the Henderson county property, at the price and upon the terms embraced in that offer Schoellkopf wrongfully converted the property to his own uses, and thereby became liable to make restitution to Bryan as if he had sold the land for $76,000 in cash on July 20, 1919, which was three days before Schoell-

kopf filed this suit. Judgment, based upon jury findings, was rendered accordingly. It was provided in the decree that Schoellkopf account to Bryan for the full amount of the Peck offer, applying the proceeds, as if it had been paid in cash to Schoellkopf, to the extinguishment of Bryan's obligations on both properties, decreeing title in the Henderson county property to Schoellkopf, and in the Dallas property, free of incumbrance, to Bryan. In other words, baldly stated, the fee-simple title to the one property, already resting in Schoellkopf through Bryan's conveyance thereof, "without reservation, mental or otherwise," was confirmed in Schoellkopf, while Bryan's debt to Schoellkopf, amounting to approximately $45,000, and secured by a first lien on the other property, was extinguished, although wholly unpaid, placing title to that property in Bryan, freed of that incumbrance. Schoellkopf has prosecuted writ of error.

[1-3] At the outset it becomes necessary to consider the nature and effect of the deed by which Bryan conveyed the Henderson county farm to Schoellkopf. Tested alone by its terms, that deed was absolute in form, substance, and effect. It conveyed the property described in fee simple and without reservation. The contemporaneous contract executed by the parties in connection with the deed must be taken into consideration in determining the effect of the latter. In that instrument it was declared and reiterated in unambiguous and emphatic language that the deed "is an absolute, bona fide conveyance in fee simple of said land to the said G. H. Schoellkopf, * * * without reservation, mental or otherwise." There is no contention in defendant in error's pleadings, proof, or briefs that the execution of the contract or deed was procured by means of fraud, or that any recitation or stipulation therein was inserted through fraud, accident, or mistake, or was ambiguous and required or would admit of explanation or modification.

The position of defendant in error, adopted by the trial court, is, simply, that the contract and deed comprise the voluntary expression of the will, intention, and purposes of the parties, but that by the terms thereof Schoellkopf was required to sell the property at the first opportunity, to whom, at such price, and upon such terms as a reasonably prudent person would demand; that, when such sale was made, Schoellkopf should account to Bryan as if the terms were all cash, even though in fact the sale be made for less than 10 per cent. cash and more than 90 per cent. paper, and dubious paper at that, as disclosed by the evidence. The language of the contract is not justly susceptible of such distortion, and courts of justice will not usurp the constitutional prerogative of individuals in order to make new contracts for them at such grotesque variance from

their expressed will. The integrity of lawful contracts deliberately entered into in good faith and expressed in plain terms is inviolate. It is conceded by all parties that the contract in question was deliberately and advisedly entered into in good faith by both parties. It is expressed in unambiguous, direct, and emphatic language, which must be construed according to its plain import.

[4] Tested by these rules, the effect of the deed and contemporaneous contract was to convey to Schoellkopf the absolute fee-simple title to the property described, with the simple contingent obligation placed upon Schoellkopf that, "whenever" the property "shall be sold and conveyed by the said Schoellkopf, his heirs or legal representatives, then he, the said Schoellkopf, or his heirs or legal representatives, shall apply, as a credit on the" $35,000 note against the Dallas property, "the excess, if any, of the purchase price of said 1,900-acre tract of land, whether in cash or vendor's lien notes, over and above" Schoellkopf's investment in that tract of land. Defendant in error contends, and the trial court held, that by this stipulation Schoellkopf was required to accept Peck's offer to purchase the Henderson county land for the consideration of $76,000, $6,060 in cash, $1,440 in a note of an unnamed third party, secured by the vendor's lien on a Dallas lot, and the balance of $68,500 in notes, extending over a period of four years, and secured by a lien upon the very property to be conveyed in the transaction. And it is further contended by appellee, and held by the trial court, that, by refusing to accept Peck's offer, Schoellkopf converted the Henderson county property to his own uses, and must account to Bryan for the full amount of the offered price of $76,000 as if it had been paid to Schoellkopf in cash, and thus wipe out the whole of Bryan's debt to Schoellkopf, decreeing the title to the Dallas property into Bryan, free of all incumbrance. We conclude that this disposition of the case is obviously and egregiously erroneous, and that by it the whole purpose and intention of the parties, as plainly expressed in their contract, were subverted.

Under the terms of the contract no restriction was placed upon the judgment or discretion of Schoellkopf as to when, to whom, or upon what terms he should dispose of the Henderson county property. There were no provisions under which he was to consult Bryan as to when, to whom, or upon what terms he should sell. The maximum restraint resting upon him from the contract was the possible duty not to fraudulently or arbitrarily refuse to sell the property when offered an amount in cash sufficient to extinguish the whole of Bryan's debt to him. Of course, it is true that under the express terms of the contract he had the privilege, if he chose to exercise it, of disposing of the property upon terms other than cash, but it is certain that nothing in the language of the contract made it his duty to make that character of sale. And, if he had chosen to exercise this privilege, it would have rested solely within his sound judgment and business discretion to determine how much cash he would exact and how much paper, as well as the terms of the paper; and so would it be his privilege to elect the person to whom such terms would be made, and by whose ability and integrity the value and desirability of the paper would be measured. By the provisions of the contract between the parties these matters of business judgment and discretion were left to Schoellkopf; they were not delegated in whole or in part to Bryan, nor to arbitrators, nor to juries.

[5, 6] In construing contracts, it is the duty of the courts to give effect to the intention of the parties as expressed in the instruments. The intention must be gotten from the circumstances of the particular case in hand. In this case Schoellkopf had been carrying Bryan's notes and the accumulating interest thereon for years, yielding to Bryan's importunities for further time in which to work out his salvation without the loss of his equities. Schoellkopf had even paid the recurring taxes upon both properties; thus preserving the status of their respective titles. This condition had existed for several years when the contract and deed of July 1, 1918, were executed concerning the Henderson county property. At that time Schoellkopf held Bryan's matured note for $9,560, secured by a deed of trust second lien upon that property. A first lien, held by another for $21,600, was about to mature, as were taxes aggregating about $500. Bryan was helpless; could meet no part of these obligations, which perhaps approximated the market value of the property; and Schoellkopf had grown weary of carrying the growing burden. In this situation the parties entered into the contract and deed of July 1, 1918, whereby Bryan conveyed to Schoellkopf the absolute title in the property, coupled with the contingent promise upon the part of Schoellkopf that, "whenever the property shall be sold or conveyed by" him or his heirs or assigns, the "excess, if any" of the purchase price obtained "over and above" his investment in the property should be applied to the extinguishment of Bryan's obligation to Schoellkopf on the Dallas property. As Bryan could not pay the debt or any part of it, and Schoellkopf refused to carry it any longer, what other object or intention could the parties have had in changing it into the form selected than to enable Schoellkopf to liquidate his security, converting it into cash? His debt was already secured by a lien on the property. What object could be attained by conveying it to him upon condition that he resell it on credit, leaving the debt still unpaid and resting upon the identical security? The debt

was then due, and the property subject to immediate foreclosure. What beneficial object could be attained by further postponement of maturity without change in security? The sole object of the parties was to avoid postponement, to relieve Bryan of the debt, to meet Schoellkopf's demand for liquidation of his asset. It is impossible to say that the new arrangement, or the contract by which it was effectuated, was intended to bind Schoellkopf to resell the property on credit, and thereby return to the very position from which the transaction was designed to extricate him.

[7] The jury found in response to the first issue submitted to them that a person of ordinary prudence, situated as Schoellkopf was, and acting in good faith, would not have accepted Peck's offer to purchase the Henderson county land, "without reference to any change in the contract of July 1, 1918." The effect of this finding is that, in view of the terms of that contract, the prudent man in Schoellkopf's place would not have accepted Peck's offer. We conclude that this finding had the effect of relieving Schoellkopf, even under the theory upon which judgment was rendered against him. The contract in question was binding upon both parties; each had the right to stand upon its terms as written. In his negotiations with Peck and Bryan Schoellkopf offered to make the sale to Peck, if Bryan would agree to certain changes in the existing contract, but Bryan refused to make the proposed changes. The jury found that a prudent man, acting in good faith, would not have sold to Peck so long as the contract remained as written, and this finding excused Schoellkopf from doing the very thing for which he was penalized by the judgment rendered in the case.

[8, 9] In his brief Bryan omits any reference to the finding discussed above, but refers to, and relies upon, the jury's finding upon the second special issue, to the effect that a prudent man, acting in good faith in Schoellkopf's place, with the information he or his agents "had, or could have acquired by reasonable inquiry," would have made the sale to Peck "for the consideration offered by Peck and by Bryan to induce the conveyance and on the security he was to receive for the deferred obligations of Peck." In the submission of this issue no mention was made of the contract in question, as was done in the first issue submitted. There appears to be no basis for the submission of the second issue, unless it was induced by the fact that, about a month after Schoellkopf had declined to accept Peck's offer, Bryan supplemented the offer by proposing to augment the security by a second lien upon the Dallas property (upon which Schoellkopf had an existing first lien) for an indefinite and unnamed amount, and by offering to take up the first of the notes to have been given by Peck under his original offer, amount-

ing to $8,500. Schoellkopf made no reply to this supplemental offer, and shortly afterward brought this suit. It is possible that this supplemental offer induced submission of the second special issue. But this does not seem to matter. The finding of the jury thereon could not neutralize the effect of the prior finding that a prudent man, acting in good faith, would not have accepted Peck's offer "without reference to any change in the contract" between the parties. If the contract was left out of sight and consideration in the submission and determination of the second issue, then the finding is meaningless; since the contract is the very foundation of the case, and could not be thus ignored. If by the second issue it was determined that a prudent man would have sold to Peck on his offer, in spite of or "without reference to any change in the contract," then that determination is in irreconcilable conflict with the finding on the first issue submitted, in the face of which conflict judgment could not properly be rendered.

The case also involves the question of estoppel. In the negotiations between Bryan, Peck, and Schoellkopf shortly before Schoellkopf filed this suit seeking foreclosure upon both the Henderson and Dallas properties, Bryan claimed that his deed of the Henderson county property to Schoellkopf, although absolute in form, was intended only as a mortgage; that Bryan was the real owner, and Schoellkopf's interest therein was that of a lienholder only. In his petition Schoellkopf asserted that under the contract and deed he became the absolute owner of the title to the property, but that, as he desired no more than to recover his debt from Bryan, he acquiesced in the latter's claim that the deed was intended as a mortgage only, and accordingly asserted only a lien upon the property to secure the payment of the debt Bryan owed him against that property.

[10] Shortly after the suit was filed, Bryan testified by deposition in consonance with his claim before the filing of the suit and Schoellkopf's acquiescence therein that his claim was that Schoellkopf's interest in the Henderson county land was that of a lienholder only. In his live pleadings Bryan made the same claim until a few days before the cause was tried, when he filed his final pleadings, from which he omitted his claim that the deed was intended only as a mortgage and Schoellkopf's interest in the land was that of a mere lienholder, and asserted the contrary contention that the deed vested title in Schoellkopf. The cause has been thrice tried, the first two trials being had under the former pleading, and upon these trials Bryan formally admitted Schoellkopf's cause of action (which was for foreclosure of the asserted lien), except as it might be defeated by his defenses; these admissions being made in order to obtain the right to open and close the case. It is shown by

the evidence that, in reliance upon Bryan's claim that the deed was intended as a mortgage, and that Schoellkopf was merely a lienholder, the latter acquiesced in that claim, and was thereby induced to file an action for foreclosure in accordance therewith, and remained in that position in consonance with Bryan's pleadings; that, in further reliance upon Bryan's claim, through the five intervening years he had refrained from trying to sell the property, although he was sure he could have sold it "at some price," but for Bryan's claim and his acquiescence therein. In his trial pleadings Schoellkopf set up these facts in estoppel of Bryan's change of position in his final answer, in which his former claim was abandoned for the contention that the deed and contract did in fact place title to the property in Schoellkopf. While the judgment must be reversed upon the grounds already disposed of, we are of the opinion that Bryan was estopped by his conduct from assuming his last stand. By that conduct he led his adversary into the position of foregoing his right to assert absolute title to the land; of going to the expense of filing and prosecuting a suit for foreclosure, which could not be maintained from any other position; of abandoning all effort to sell the land, which he could not consummate from that position. Moreover, by his claim before suit, by his testimony and pleadings asserting that claim, Bryan so beclouded the title that no investor would purchase it. We are of the opinion that in deference, not only to familiar principles of equitable estoppel and of justice, but to the integrity of orderly judicial procedure, the defendant in error will be bound to the position to which he led the plaintiff in error, and which he occupied with the plaintiff in error for the whole five years of the litigation up to the time of trial. That position entitled plaintiff in error to a foreclosure of the asserted liens.

The judgment will be reversed, and, as the accounting thereunder is somewhat complicated, and not clearly apparent from the record, the cause will be remanded for the purpose of ascertaining the amount recoverable by plaintiff in error, and of declaring and enforcing his liens for that amount.

Reversed and remanded.